FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 14, 2016

SEAN F. McAVOY, CLERK

1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF WASHINGTON**

7   STEVEN ARTHUR REDMAN,              No. 1:15-CV-03063-MKD

8              Plaintiff,              ORDER DENYING PLAINTIFF'S
                                       MOTION FOR SUMMARY
9        vs.                          JUDGMENT AND GRANTING
                                       DEFENDANT'S MOTION FOR
10  CAROLYN W. COLVIN,                 SUMMARY JUDGMENT

11  Acting Commissioner of Social Security,   ECF Nos. 14, 15

12             Defendant.

13          BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 14, 15.  The parties consented to proceed before a magistrate

15  judge.  ECF No. 4.  The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed.  For the reasons discussed below, the Court

17  denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No.

18  15).

19

20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

1  *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate

2  nondisability determination." *Id.* at 1115 (quotation and citation omitted). The

3  party appealing the ALJ's decision generally bears the burden of establishing that

4  it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

5  <center>**FIVE-STEP EVALUATION PROCESS**</center>

6  A claimant must satisfy two conditions to be considered "disabled" within

7  the meaning of the Social Security Act. First, the claimant must be "unable to

8  engage in any substantial gainful activity by reason of any medically determinable

9  physical or mental impairment which can be expected to result in death or which

10 has lasted or can be expected to last for a continuous period of not less than twelve

11 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

12 "of such severity that he is not only unable to do his previous work[,] but cannot,

13 considering his age, education, and work experience, engage in any other kind of

14 substantial gainful work which exists in the national economy." 42 U.S.C. §

15 423(d)(2)(A).

16 The Commissioner has established a five-step sequential analysis to

17 determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

18 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

19 work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

20

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

1  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

2  404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

3       At step four, the Commissioner considers whether, in view of the claimant's

4  RFC, the claimant is capable of performing work that he or she has performed in

5  the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

6  capable of performing past relevant work, the Commissioner must find that the

7  claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

8  performing such work, the analysis proceeds to step five.

9       At step five, the Commissioner considers whether, in view of the claimant's

10 RFC, the claimant is capable of performing other work in the national economy.

11 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

12 must also consider vocational factors such as the claimant's age, education and

13 past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

14 adjusting to other work, the Commissioner must find that the claimant is not

15 disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

16 other work, analysis concludes with a finding that the claimant is disabled and is

17 therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

18      The claimant bears the burden of proof at steps one through four above.

19 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

20 step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits on June 26, 2012,

alleging a disability onset date of June 1, 2012. Tr. 143-149. The application was

denied initially, Tr. 59-67, and on reconsideration. Tr. 68-77. Plaintiff appeared at

a hearing before an administrative law judge (ALJ) on July 15, 2013. Tr. 22-58.

On September 16, 2013, the ALJ denied Plaintiff's claim. Tr. 6-21.

At the outset, the ALJ found that Plaintiff met the insured status

requirements of the Act with respect to his disability insurance benefits claim

through December 31, 2016. Tr. 11. At step one, the ALJ found that Plaintiff has

not engaged in substantial gainful activity since the alleged onset date, June 1,

2012. Tr. 11. At step two, the ALJ found Plaintiff has the following severe

impairments: ankylosing spondylitis (AS); Crohn's disease; latent tuberculosis

(TB); and obesity. Tr. 11. At step three, the ALJ found Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of a listed impairment. Tr. 12. The ALJ then concluded that Plaintiff has

the RFC to perform light work with the following additional limitations and

qualifications:

[H]e can stand and walk for about 6 hours in [an] 8 hour workday with normal breaks; he can lift, carry, and push, and pull within the light exertional limits, except he can never push or pull overhead; he can never reach overhead; he can perform work that is indoors for reasonable access to the bathroom; he can frequently climb ramps and stairs and crouch; he can never climb ladders, ropes, or scaffolds or crawl; he can occasionally stoop; he can perform work in which concentrated exposure to extreme cold, heat, wetness, vibration, and or hazards are not present.

Tr. 12.

At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 15. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as cashier II, counter attendant, and hand packager. Tr. 16. On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act. Tr. 16-17.

On March 26, 2015, the Appeals Council denied review, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for review:

1. Whether the ALJ properly considered the medical opinion evidence;

2. Whether the ALJ properly considered the lay testimony;

3.    Whether the ALJ properly discredited Plaintiff's symptom claims; and

4.    Whether the ALJ made a proper step five finding.

ECF No. 14 at 5.

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly discounted the medical opinion of treating physician Judith Harvey, M.D.  ECF No. 14 at 8-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 2014).

In December 2012, Dr. Harvey completed a medical report in which she reported that Plaintiff has suffered from AS since approximately 1990, it is currently considered severe, and he has pain in his neck and shoulders, which limits his functioning. Tr. 280. Dr. Harvey opined that Plaintiff's neck symptoms were worsening and he would likely miss up to a week per month from work due to pain. Tr. 280-281. The ALJ gave this opinion little weight.

Because Dr. Harvey's opinion was contracted by Dr. Staley, Tr. 69-77, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Harvey's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Dr. Harvey's opinion is inconsistent with the record. Tr. 15. An ALJ may discredit a treating physician's opinions that are

1    unsupported by the record as a whole or by objective medical findings.  *Batson v.*

2    *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

3        As an initial matter, Plaintiff did not challenge this reason.  ECF No. 14 at 8-

4    10.  Plaintiff's failure to raise the issue in her opening brief means the issue is

5    waived.  *See Bray*, 554 F.3d at 1226 n.7.  Here, the ALJ set out the medical

6    evidence and concluded that it did not support the disabling limitations opined by

7    Dr. Harvey.  The ALJ observed that "claimant's AS has been a long-standing

8    condition," Tr. 15, which is well documented in the record.  The ALJ noted that in

9    March 2012, Plaintiff had reported that his AS was under control with medications.

10   Tr. 15 (citing Tr. 231).  During a medical appointment to establish care with a new

11   provider, Plaintiff indicated he had managed his AS for 15 years with ibuprofen,

12   and subsequently with Celebrex.  Tr. 15 (citing Tr. 233).  He told the physician that

13   he could manage his disease better with increased exercise.  Tr. 233.  The ALJ also

14   noted that despite the allegations of disabling neck pain, Plaintiff was not taking

15   any pain medications.  Tr. 14.  Finally, the ALJ noted that the medical records

16   contained minimal complaints of neck pain for the alleged disability period.  Tr.

17   14.  In fact, the medical records indicate that Plaintiff's complaints of neck pain

18   occurred primarily in 2011, prior to alleged onset date.  However, that pain did not

19   prevent him from working, as Plaintiff quit his job in June 2012.  Tr. 13.  Here, the

20   ALJ's finding that this medical record, which included minimal complaints of neck

1   pain during the alleged disability period and minimal use of pain medications, was

2   inconsistent with an assessment that Plaintiff would miss up to a week of work a

3   month due to neck pain.  Although the medical record could be interpreted as

4   favorable to the Plaintiff, here, the medical evidence of record was susceptible to

5   more than one rational conclusion, and therefore the ALJ's conclusion must be

6   upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

7        Second, the ALJ rejected Dr. Harvey's opinion in part because "[i]t appears

8   that claimant went to Dr. Harvey about hip pain and not neck pain," and because

9   Plaintiff made no mention of issues with Crohn's disease.  Tr. 15.  Defendant

10   concedes the ALJ erred in asserting this reason as a basis for rejecting Dr.

11   Harvey's opinion.  ECF No. 15 at 8.  This was not a specific and legitimate reason

12   to reject Dr. Harvey's opinion.

13        Third, the ALJ rejected Dr. Harvey's opinion that Plaintiff would miss up to

14   a week of work a month, finding it to be speculative and not helpful since "up to" a

15   month could mean no missed work.  Tr. 15.[1]  A medical opinion may be rejected

16   by the ALJ if it is conclusory, contains inconsistencies, or is inadequately

17   supported.  *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th

18

---

19   [1] The Court rejects the ALJ's interpretation of the limitation that it could mean no

20   missed work.  That is not a valid interpretation of the physician's limitation.

Cir. 2002).  Here, Dr. Harvey provided no clinical findings or explanation to support such an extreme limitation.  In fact, in the section of the report labeled "Describe your patient's signs (relevant clinical findings, test results, etc.)," Dr. Harvey stated "severely kyphosis, x-ray done a very long time ago."  Tr. 280.  This report was generated in December 2012, Tr. 281, which is only six months after Plaintiff quit his full time employment.  Given the lack of objective clinical findings to support such an extreme limitation, the ALJ did not error in finding that limitation was unsupported.  This was a specific, legitimate reason to give limited weight to Dr. Harvey's opinion.

**B. Lay Opinion**

Next, Plaintiff contends that the ALJ erred in assessing the statements of Plaintiff's wife.  ECF No. 14 at 9-10.  In July 2012, Ms. Redman submitted a Third Party Function Report.  Tr. 179-186.  She reported that Plaintiff had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling and stair climbing due to his mobility issues.  *Id*.  She also reported that Plaintiff had no difficulty with personal care, prepared meals daily, performed household chores including household repairs and mowing.  *Id*.  The ALJ gave Ms. Redman's statements some weight.  Tr. 15.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into

1  account, and an ALJ is required to give germane reasons for discounting lay

2  testimony. *Molina*, 674 F.3d at 1114 (citations omitted).

3       Here, the ALJ discounted Ms. Redman's statements because they were not

4  wholly consistent with the record, in that the medical evidence indicated that

5  Plaintiff's AS and Crohn's disease were fairly stable.  Tr. 15.  Also, the ALJ noted

6  that Ms. Redman's report described some discomfort, but also described a fairly

7  full range of activities of daily living.  Tr. 15.  The ALJ further noted that

8  discomfort does not equate to disability.  Tr. 15.  An ALJ may reject lay testimony

9  that is inconsistent with the medical evidence.  *See Bayliss*, 427 F.3d at 1218.

10  Here, as discussed *supra* and *infra*, the ALJ found the medical records did not

11  support the Plaintiff's allegations of disabling limitations.  This was a germane

12  reason to reject Ms. Redman's statements.[2]

13       In support of her contention that the ALJ improperly rejected Ms. Redman's

14  statements, Plaintiff cites to several medical records.  ECF No. 14 at 10 (citing Tr.

15  226, 233, 308).  However, none of those medical records contain an assessment by

16  _____

17  [2] Moreover, the Court notes that the assessed RFC provides that Plaintiff could

18  never crawl and can only occasionally stoop, which incorporates Ms. Redman's

19  indications that Plaintiff has difficulty, but is not unable, to perform these

20  activities.  Tr. 12.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 13

1   a medical provider opining that Plaintiff had any work-related functional

2   limitations in his ability to stoop, squat, and look around, or that he required

3   assistance with his daily activities.

4   **C. Adverse Credibility Finding**

5       Plaintiff faults the ALJ for failing to provide specific findings with clear and

6   convincing reasons for discrediting his symptom claims.  ECF No. 14 at 10-14.

7       An ALJ engages in a two-step analysis to determine whether a claimant's

8   testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

9   determine whether there is objective medical evidence of an underlying

10  impairment which could reasonably be expected to produce the pain or other

11  symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

12  "The claimant is not required to show that [his] impairment could reasonably be

13  expected to cause the severity of the symptom [he] has alleged; [he] need only

14  show that it could reasonably have caused some degree of the symptom."  *Vasquez*

15  *v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

16      Second, "[i]f the claimant meets the first test and there is no evidence of

17  malingering, the ALJ can only reject the claimant's testimony about the severity of

18  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

19  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

20  citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see also Thomas,* 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms not credible. Tr. 14-15. Here, Plaintiff only challenged two of the several reasons identified by the ALJ.

First, the ALJ found that Plaintiff gave inconsistent statements regarding the reason for quitting his job. Tr. 14. In evaluating credibility, the ALJ may consider

inconsistencies in Plaintiff's testimony or between his testimony and his conduct. *Thomas*, 278 F.3d at 958-59; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (in making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation).  Plaintiff testified that he stopped working because he was unable to stand for 10 hours and he believed he was going to be fired.  Tr. 14, 32-34.  However, the ALJ observed that the unemployment records demonstrated that Plaintiff quit his job due to a personality conflict with his employer.  Tr. 14 (citing Tr. 217).  This was a clear and convincing reason for discrediting Plaintiff's testimony.

Second, the ALJ found that Plaintiff stopped working for reasons that were unrelated to his physical impairments.  Tr. 14.  When considering a claimant's contention that he cannot work because of his impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to his alleged disability.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (the ALJ properly discounted claimant's credibility based, in part, on the fact that the claimant's reason for stopping work was not his disability).  Here, as noted *supra*, the ALJ observed that the unemployment records indicated that Plaintiff quit his last job due to a

personality conflict with his employer and the likelihood that he would be laid off later that year when work slowed. Tr. 14 (citing Tr. 217). This was a clear and convincing reason to discredit Plaintiff's testimony.

Third, the ALJ observed that Plaintiff was actively seeking work months after the alleged onset date and also applied for unemployment benefits, a process that required Plaintiff to indicate that he was ready, able, and willing to work. Tr. 14. The ALJ found these facts to be inconsistent with Plaintiff's allegations that he suffers from disabling impairments. Tr. 14. Receipt of unemployment benefits may cast doubt on a claim of disability. *See Ghanim*, 763 F.3d at 1165; *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). However, if the record does not establish whether the claimant held himself out as available for full-time or part-time work, receipt of unemployment benefits may not be inconsistent with disability allegations. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Here, Plaintiff applied for, but was denied, unemployment benefits. Tr. 33-36. However, Plaintiff testified that when he applied for unemployment benefits, he understood that he had to be ready, willing and able to accept any full time employment that would be offered to him. Tr. 36. The record establishes that Plaintiff "held himself out as available for full-time" work, which is inconsistent with disability allegations. *Carmickle*, 533 F.3d at

1161-62.   This was a clear and convincing reason to discredit Plaintiff's

testimony.

Fourth, the ALJ found that the medical records do not establish disabling

physical symptoms.  Tr. 14.  An ALJ may not discredit a claimant's pain testimony

and deny benefits solely because the degree of pain alleged is not supported by

objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,

885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant

factor in determining the severity of a claimant's pain and its disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. §416.929(c)(2); *see also* S.S.R. 96-7p.[3]

Minimal objective evidence is a factor which may be relied upon in discrediting a

claimant's testimony, although it may not be the only factor.  *See Burch*, 400 F.3d

at 680.

---

[3] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

ruling also provides that the consistency of a claimant's statements with objective

medical evidence and other evidence is a factor in evaluating a claimant's

symptoms.  S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the

time of the ALJ's decision and therefore does not apply in this case.

1    For example, the ALJ noted that Plaintiff testified that he was unable to

2    work due to ongoing neck pain; however, Plaintiff did not take any pain

3    medication for his neck pain.  Tr. 14.  The ALJ further noted that the medical

4    records document minimal complaints regarding neck pain during the alleged

5    disability period.  Tr. 14.  Moreover, the ALJ noted that prior to 2011, Plaintiff

6    endorsed improved symptoms of neck pain if taking prednisone.  Tr. 14.

7        The ALJ observed that Plaintiff testified that as a result of his Crohn's

8    disease, he had to go to the bathroom approximately four times per day up to 45

9    minutes.  The ALJ found that the medical record did not support such allegations.

10   The ALJ set forth in detail numerous instances where Plaintiff reported that his

11   Crohn's disease was relatively stable and he had no or minimal gastrointestinal

12   symptoms.  Tr. 14 (citing Tr. 235 (Crohn's disease is stable), 262, 284, 289, 299,

13   307); *see also* Tr. 233.

14       Moreover, the ALJ noted that Plaintiff's AS's disease was relatively well

15   controlled with medication.  Tr. 14.  Impairments that can be controlled effectively

16   with medication are not disabling for the purpose of determining eligibility for SSI

17   benefits.  *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir.

18   2006); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment

19   can undermine a claimant's complaints of debilitating pain or other severe

20   limitations).  Here, Plaintiff reported to Dr. Chen in March of 2012 that his AS was

under control with medication.  Tr. 231.  He further reported to Dr. Peacock in

May of 2012, that he had managed his AS for 15 years with ibuprofen and then

with Celebrex, which seemed to work well.  Tr. 233.  Although the objective

evidence could be interpreted as more favorable to the Plaintiff, here, the medical

evidence of record was susceptible to more than one rational conclusion, and

therefore the ALJ's conclusion as to the inconsistencies between Plaintiff's alleged

physical impairments, and the overall record, must be upheld.  *See Burch,* 400 F.3d

at 679.

Fifth, the ALJ found that Plaintiff's daily activities were inconsistent with

disability.  Tr. 14.  A claimant's reported daily activities can form the basis for an

adverse credibility determination if they consist of activities that contradict the

claimant's "other testimony" or if those activities are transferable to a work setting.

*Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603

(9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding

"if a claimant is able to spend a substantial part of his day engaged in pursuits

involving the performance of physical functions that are transferable to a work

setting.").  "While a claimant need not vegetate in a dark room in order to be

eligible for benefits, the ALJ may discredit a claimant's testimony when the

claimant reports participation in everyday activities indicating capacities that are

transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).  Here, the ALJ noted that Plaintiff is independent in his personal care needs, such as dressing and bathing; he prepares meals daily and performs household chores, including small household repairs and mowing the lawn once per week.  Tr. 14.  Plaintiff is able to drive and shop in stores; and he watched three to five hours of television daily.  Tr. 14.  He stated he went out daily and was able to go out alone.  Tr. 14.  He regularly went to swap meets, festivals, and travelled, including taking a 20 hour road trip to Arizona, where he and his wife switched driving responsibility every 2.5 hours.  Tr. 14.

Plaintiff contends that none of the activities cited by the ALJ were inconsistent with Plaintiff's alleged limitations, nor do they show that he was capable of gainful employment for a sustained period of time.  ECF No. 14 at 12. Here, the ALJ did not articulate how these particular activities were inconsistent with Plaintiff's specific allegations of disabling impairments.  However, even assuming that the ALJ erred, any error is harmless because, as discussed in detail in this section, the ALJ offered additional reasons, supported by substantial evidence, for the ultimate adverse credibility finding.  *See Carmickle*, 533 F.3d at 1162-63.

1    In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

2    specific, clear, and convincing reasons, supported by the record, for rejecting

3    Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

4    **D. Step Five – RFC and Hypothetical**

5        Finally, Plaintiff argues that the ALJ erred in assessing an RFC that did not

6    include all of the limitations opined by Plaintiff's medical provider and the lay

7    witness testimony; and therefore relied on the vocational expert's response to a

8    hypothetical that does not accurately reflect Plaintiff's limitations.  ECF No. 14 at

9    14-15.

10       A claimant's RFC is "the most [the claimant] can still do despite [his or her]

11   limitations;" and is based on all the relevant evidence in the claimant's case record.

12   20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining the RFC, the ALJ is

13   required to consider the combined effect of all the claimant's impairments, mental

14   and physical, exertional and non-exertional, severe and non-severe.  42 U.S.C. §

15   423(d)(2)(B), (5)(B).  Further, "[a]n ALJ must propound a hypothetical to a

16   [vocational expert] that is based on medical assumptions supported by substantial

17   evidence in the record that reflects all the claimant's limitations."  *Osenbrock v.*

18   *Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  "If the assumptions in the hypothetical

19   are not supported by the record, the opinion of the vocational expert that claimant

20   has a residual working capacity has no evidentiary value."  *Gallant v. Heckler*, 753

F.2d 1450, 1456 (9th Cir. 1984). However, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrock,* 240 F.3d at 1164; *Magallanes v. Bowen,* 881 F.2d 747, 756–57 (9th Cir. 1989). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Magallanes,* 881 F.2d at 756-57.

Plaintiff argues the RFC and hypothetical failed to include Dr. Harvey's limitation that Plaintiff would miss a week of work a month and Ms. Redman's statement that stooping and squatting are difficult for Plaintiff. Plaintiff's arguments are based on the assumption that the ALJ erred in considering the medical opinion evidence and the lay testimony. ECF No. 14 at 14-15. As discussed above, the ALJ's reasons for rejecting Dr. Harvey's opinion and Mrs. Redman's statements were legally sufficient and supported by substantial evidence.

For all of these reasons, the ALJ properly excluded limitations assessed by the above-referenced medical provider and witness from the RFC and hypothetical propounded to the vocational expert. The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. *See Magallanes*, 881 F.2d at 756-757. The ALJ's reliance on testimony the vocational

expert gave in response to the hypothetical was therefore proper.  *See id*.; *Bayliss*, 427 F.3d at 1217-18.  The ALJ did not err at step five.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED**

2.  Defendant's motion for summary judgment (ECF No. 15) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

DATED this 14th day of September, 2016.

<u>*S/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE